# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| CLARENCE FOUST, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | CASE NO. 3:19-cv-00173-HSM-DCP |
| v. | ) ) | JURY DEMAND |
| COMCAST CORPORATION, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S COMBINED MOTION TO COMPEL ARBITRATION AND TO STAY DISCOVERY PENDING DECISION THEREON, AND MOTION IN THE ALTERNATIVE TO DISMISS <u>NON-TENNESSEE PUTATIVE CLASS MEMBERS</u>**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**................................................................................................ 1

**FOUST'S ALLEGATIONS** ............................................................................... 2

**FACTUAL BACKGROUND** ............................................................................. 4

I.      COMCAST DELIVERED ITS SERVICES TO FOUST'S HOME................................. 4

II.     THE SUBSCRIBER AGREEMENT CONTAINS A BINDING ARBITRATION
PROVISION. ........................................................................................................ 5

**ARGUMENT**..................................................................................................... 6

I.      THE COURT SHOULD COMPEL FOUST'S CLAIMS TO ARBITRATION. ............... 6

     A.    The FAA governs the arbitrability of Foust's claims. ............................ 6

     B.    Foust agreed to arbitrate his disputes with Comcast................................. 8

          i.       Foust accepted the Arbitration Agreement by using Comcast's
services.................................................................................... 8

          ii.      Foust is bound by the Arbitration Provision through his privity
with Austin and Elaine.............................................................. 9

     C.    The scope of the Arbitration Provision covers Foust's claims. ........................... 11

     D.    Congress intended for TCPA claims to be arbitrated. ........................................ 12

     E.    The Court should dismiss Foust's claims while the parties pursue
arbitration.................................................................................................... 12

II.     THE COURT SHOULD STAY DISCOVERY PENDING ITS DECISION ON
COMCAST'S MOTION........................................................................................ 12

III.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE CLAIMS OF
NON-TENNESSEE PUTATIVE CLASS MEMBERS................................................... 15

     A.    The law of personal jurisdiction. ...................................................... 16

     B.    The Court lacks general jurisdiction over Comcast.............................. 17

     C.    The Court lacks specific jurisdiction over Comcast for non-Tennessee
claims.................................................................................................... 18

i

D.     The due process requirements for personal jurisdiction apply equally to class actions. ........................................................................................................ 19

**CONCLUSION** ........................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n v. Miller,*
    523 U.S. 866 (1998)..................................................................................................13

*Ambrose Assocs. v. Musselman,*
    2003 WL 22251350 (Tenn. Ct. App. Oct. 2, 2003)................................................10

*Ambrose v. Comcast Corp,*
    2010 WL 1270712 (E.D. Tenn. Mar. 31, 2010) ...............................................7, 8, 9

*Andrews v. TD Ameritrade, Inc.,*
    596 F. App'x 366 (6th Cir. 2014) ............................................................................1

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011)..................................................................................................7

*Bird v. Parsons,*
    289 F.3d 865 (6th Cir. 2002) .................................................................................16

*Blackburn v. Capital Transaction Grp., Inc.,*
    No. 2:13-CV-98, 2014 WL 923316 (E.D. Tenn. Mar. 10, 2014) .............................7

*BNSF Ry. Co. v. Tyrrell,*
    137 S. Ct. 1549 (2017)........................................................................................17, 18

*Bridgeport Music, Inc. v. Still N The Water Pub.,*
    327 F.3d 472 (6th Cir. 2003) .............................................................................16, 17

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,*
    137 S. Ct. 1773 (2017)...........................................................................16, 18, 19, 20

*CalsonicKansei N. Am., Inc. v. Randstad U.S., LP,*
    2013 WL 12213849 (E.D. Tenn. Sept. 11, 2013)..................................................12

*In re CenturyLink Sales Practices & Sec. Litig.,*
    2018 WL 2122869 (D. Minn. May 8, 2018)......................................................14, 15

*Collier v. Greenbrier Developers, LLC,*
    358 S.W.3d 195 (Tenn. Ct. App. 2009)..................................................................10

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)...........................................................................................17, 18

*Danley v. Encore Capital Grp., Inc.*,
   2016 WL 8115421 (E.D. Mich. Apr. 20, 2016)..............................................................13, 15

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)......................................................................................................7

*In re Dental Supplies Antitrust Litig.*,
   2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) .....................................................................20

*In re Dicamba Herbicides Litig.*,
   2019 WL 460500 (E.D. Mo. Feb. 6, 2019)...........................................................................20

*Drozdowski v. Citibank, Inc.*,
   2016 WL 4544543 (W.D. Tenn. Aug. 31, 2016)...................................................................12

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)...................................................................................................7

*Fazio v. Lehman Bros.*,
   340 F.3d 386 (6th Cir. 2003) ..........................................................................................11

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)........................................................................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)......................................................................................................17

*Green v. Ameritech Corp.*,
   200 F.3d 967 (6th Cir. 2000) ..........................................................................................12

*Harris v. TD Ameritrade, Inc.*,
   No. 4:14-CV-0046, 2015 WL 64880 (E.D. Tenn. Jan. 5, 2015)..........................................1, 12

*Hosp. Auth. of Metro. Govt. of Nashville v. Momenta Pharm., Inc.*,
   353 F. Supp. 3d 678 (M.D. Tenn. 2018)..............................................................................19

*Hubbell v. NCR Corp.*,
   2018 WL 1638882 (S.D. Ohio Apr. 5, 2018) ..................................................................13, 14

*Jacobs Field Servs. N. Am., Inc. v. Wacker Polysilicon N. Am., LLC*,
   375 F. Supp. 3d 898 (E.D. Tenn. 2019)..............................................................................6, 7

*Jones v. Depuy Synthes Prod., Inc.*,
   330 F.R.D. 298 (N.D. Ala. 2018).......................................................................................15

*Jordan v. Comcast Cable Commc'ns Mgmt., LLC*,
   No. 14-3622, 2016 WL 452145 (N.D. Ga. Feb. 4, 2016).........................................................9

iv

*Levin v. Alms & Associates, Inc.*,
   634 F.3d 260 (4th Cir. 2011) ............................................14

*Lyngaas v. Curaden AG*,
   No. 17-CV-10910, 2019 WL 2231217 (E.D. Mich. May 23, 2019) ........................19

*Maclin v. Reliable Reports of Tex., Inc.*,
   314 F. Supp. 3d 845 (N.D. Ohio 2018)............................................19, 20

*Marshall v. ITT Tech. Inst.*,
   No. 3:11-CV-552, 2012 WL 1565453 (E.D. Tenn. May 1, 2012)...........................1

*McKevitz v. Capital All. Grp.*,
   2019 WL 1318245 (E.D. Tenn. Mar. 22, 2019) ....................................17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)............................................7

*Montoya v. Comcast Corp.*,
   No. 15-2573, 2016 WL 5340651 (E.D. Cal. Sept. 23, 2016) ....................................9

*Mounts v. Midland Funding LLC*,
   257 F. Supp. 3d 930 (E.D. Tenn. 2017)............................................6

*Mussat v. IQVIA Inc.*,
   2018 WL 5311903 (N.D. Ill. Oct. 26, 2018)............................................20

*Nat'l Broad. Co. v. Bear Stearns & Co.*,
   165 F.3d 184 (2d Cir. 1999)............................................14

*O'Neil v. Comcast Corp.*,
   2019 WL 952141 (N.D. Ill. Feb. 27, 2019) ............................................9

*Perkins v. Benguet Consol. Mining Co.*,
   342 U.S. 437 (1952)............................................17

*Perry v. Thomas*,
   482 U.S. 483 (1987)............................................7

*Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.*,
   301 F. Supp. 3d 840 (N.D. Ill. 2018) ............................................20

*Reo v. Palmer Admin. Servs.*,
   2019 WL 2306641 (6th Cir. May 30, 2019) ............................................9, 10, 11

*Roadbuilders Mach. Supply Co. v. Sennebogen, Inc.*,
   2012 WL 1253265 (D. Kan. Apr. 13, 2012)............................................15

*Seawright v. Am. Gen. Fin. Servs., Inc.*,
    507 F.3d 967 (6th Cir. 2007) ...................................................8

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) ...................................................6, 8, 11, 12

*Suarez v. California Nat. Living, Inc.*,
    2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) ...................................15

*Treinish v. BorrowersFirst, Inc.*,
    2017 WL 3971854 (N.D. Ohio Sept. 8, 2017) ...................................12

**Statutes**

9 U.S.C. §§ 1–16 ..................................................................... *passim*

9 U.S.C. § 2 ...............................................................................6

29 U.S.C. § 203 ...................................................................19, 20

47 U.S.C. § 227, *et seq.* ............................................................ *passim*

**Other Authorities**

Amendment XIV, United States Constitution ...............................16

Black's Law Dictionary, 6th Ed., 1990 ......................................10

Fed. R. Civ. P. 4(k)(1)(A) .........................................................16

Fed. R. Civ. P. 12(b)(1) ...............................................................1

Fed. R. Civ. P. 12(b)(6) ...............................................................1

Fed. R. Civ. P. 12(h)(1) .............................................................15

Defendant Comcast Corporation ("Comcast")[1] submits this Combined Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16,[2] Motion to Stay Discovery Pending Decision on that Motion, and Motion in the Alternative to Dismiss Non-Tennessee Putative Class Members for Lack of Personal Jurisdiction.

## INTRODUCTION

Foust comes to this Court with unclean hands. As explained below, his attempt to litigate purported class action claims in court—as opposed to resolving his alleged grievances through binding individual arbitration—is the byproduct of "plaintiff shopping" in an obvious attempt to sidestep the parties' rights pursuant to a binding written agreement.[3] Foust assented to arbitration with Comcast for this matter in 2017 when he received, used, and benefited from Comcast's services at his home for a three-month period. At that time, Foust had no problem accepting all the benefits of Comcast's services at his home pursuant to the parties' contractual arrangement, but now he turns a blind eye to particular provisions that end his case in total in this forum. Foust made his proverbial bed over two years ago on these issues; now he has to sleep in it, no matter

---

[1] Comcast Corporation does not waive its argument that Comcast Cable Communications, LLC, is the proper defendant in this action. Comcast Corporation is a holding company, not an operating company, and is therefore not involved in the day-to-day management of its operating subsidiaries, including Comcast Cable Communications, LLC. (Declaration of Nicole Patel, ¶ 3.)

[2] Courts in the Sixth Circuit and this District have resolved motions to compel arbitration under both Rule 12(b)(1) and Rule 12(b)(6). *See Patton v. Volkswagen Grp. of Am. Chattanooga Operations, LLC*, 2017 WL 1288677, at *3 (E.D. Tenn. Apr. 6, 2017) (applying Rule 12(b)(1), but noting divergent approaches in *Andrews v. TD Ameritrade, Inc.*, 596 Fed. App'x 366 (6th Cir. 2014) (Rule 12(b)(1)); *Harris v. TD Ameritrade, Inc.*, No. 4:14-CV-0046, 2015 WL 64880 (E.D. Tenn. Jan. 5, 2015) (Rule 12(b)(6)); and *Marshall v. ITT Tech. Inst.*, No. 3:11-CV-552, 2012 WL 1565453 (E.D. Tenn. May 1, 2012) (Rule 12(b)(6))). Comcast takes no position on which Rule 12 subsection governs its Motion, as the cases cited above applied the same relevant standards under either.

[3] "Because the parties' agreement, including the agreement to arbitrate, is central to plaintiff's claims," the Court can "consider the agreement in resolving the motion to dismiss or compel arbitration under Rule 12(b)(6)." *Harris v. TD Ameritrade, Inc.*, 2015 WL 64880, at *3 (E.D. Tenn. Jan. 5, 2015). The result is the same if the Court decides this motion under Rule 12(b)(1), *supra* note 2: "The district court must undertake a limited review of evidence to determine whether it has the authority to hear a case or compel arbitration." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014).

1

how uncomfortable the beds feels to him after realizing he cannot litigate his putative claims in the way or forum he wishes. Under these circumstances, this Court should, and comfortably can, compel Foust's claims to arbitration and dismiss this action.

### FOUST'S ALLEGATIONS

Foust's Complaint alleges that Comcast made calls to his cell phone (to collect a debt and its equipment), without his prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. Foust is wrong on the merits—Comcast *did* have consent to call his cell phone—something Foust admitted in a recorded call between the parties. As detailed in the Declaration of Nicole Patel, in March 2017, Foust's son-in-law and daughter, Austin and Elaine Proffitt, signed up for Comcast's services at Foust's home, where they apparently were all living at the time. (*See* Declaration of Nicole Patel ("Patel Decl."), ¶¶ 8, 23.) When opening the Comcast account, Austin provided Foust's cell phone number (ending in 8123); Foust later admitted in a recorded call that he was allowing Austin to use his cell phone number during that time to sign up for services. (*Id.* ¶¶ 9, 21.)

When Austin and Elaine moved out of Foust's home in May 2017, they transferred Comcast's services to their new address, and in February 2018, Comcast disconnected that service for nonpayment. (*Id.* ¶¶ 17–18.) Over the next month, Comcast tried to collect the past-due balance and its equipment by placing a few calls to Austin at the 8123 number authorized by Austin with Foust's express permission. (*Id.* ¶ 19.) Every call went unanswered or the recipient hung up, until March 20, 2018, when Foust himself answered one of Comcast's calls. (*Id.* ¶¶ 19–20.) He told the agent that Austin was no longer using Foust's cell phone, and he asked Comcast to stop calling the 8123 number. (*Id.* ¶ 20–22.) In fact, later that same day, Elaine called Comcast to confirm, in a recorded call, that Austin had authorized Comcast to call the 8123 number, but then (as an authorized user on Austin's Comcast account) she provided Comcast a different number to call

2

going forward. (*Id.* ¶¶ 24–25.) Indeed, Comcast never called the 8123 number again after that date—just as Foust and Elaine had requested. (*Id.* ¶ 26.)

Nonetheless, Foust filed this lawsuit anyway, wrongly alleging that Comcast repeatedly called his 8123 number without consent. But Comcast called to reach *Austin* at the 8123 number (which he provided to Comcast) in order to collect a debt and equipment owed to Comcast on *Austin's* account. Yet Foust—not Austin—brings this putative TCPA class action. The legal strategy behind that decision is glaringly evident: even under Foust's theory of the case, Austin is unquestionably bound by an arbitration provision in Comcast's agreement, which would preclude any class treatment of his claims. But Foust's strategic and legal reasoning is misguided, because Foust himself is also unquestionably bound by the same arbitration provision, for two independent reasons:

(1) Foust assented to the arbitration provision because he used Comcast's services installed at his home, and

(2) Foust is in privity with Austin and Elaine; therefore, he is bound by the arbitration provision along with them.

For these reasons, the Court should compel Foust's claims to arbitration and dismiss this action. Further, the Court should also stay discovery pending its decision on this Motion so that Comcast is not subjected to costly and unnecessary discovery, which Comcast and Foust contracted to avoid by agreeing to arbitrate Foust's claims.

In the alternative, if the Court does not compel Foust's claims to arbitration, the Court should dismiss for lack of personal jurisdiction the claims of putative class members who have no connection to the State of Tennessee. There is no basis for the Court to exercise personal jurisdiction over Comcast for claims that lack any connection to Tennessee. Comcast is not subject to general jurisdiction in Tennessee because Comcast is neither incorporated nor headquartered there. Nor does the Court have specific jurisdiction over Comcast for the non-Tennessee claims.

3

For putative class members who did not receive calls in Tennessee and do not reside in Tennessee, their claims lack any nexus to Tennessee sufficient to subject Comcast to personal jurisdiction here.

## **FACTUAL BACKGROUND**

## I.    **COMCAST DELIVERED ITS SERVICES TO FOUST'S HOME.**

In March 2017, Austin opened a Comcast account for residential internet service. *See* Patel Decl., ¶ 8. Although Austin opened the account, Comcast provided internet service to Foust's home address at 2302 Dodson Ave., Knoxville, TN 37917 (the "Dodson Account"). (*Id.*) Foust's daughter, Elaine, was listed as an authorized user on the account. (*Id.* ¶ 10.)

As a matter of routine and regular business practice, Comcast residential internet subscribers receive a Comcast Welcome Kit when they start services. (*Id.* ¶ 11.) Comcast's business records reflect that an authorized user of the Dodson Account picked up a Welcome Kit from a Comcast retail store on March 1, 2017. (*Id.* ¶ 13.) The Welcome Kit customarily includes a copy of the Comcast Agreement for Residential Services (the "Subscriber Agreement" or the "Agreement"). (*Id.* ¶ 12 (attaching Subscriber Agreement as Exhibit A).)

Under the terms of the Subscriber Agreement, Foust's use of Comcast's internet service in his own home effectuated his acceptance of the Agreement: "You will have accepted this Agreement and be bound by its terms if you use the Service(s) or otherwise indicate your affirmative acceptance of such terms." (Ex. A § 1.) Further, the Agreement provides:

> You acknowledge that you are accepting this Agreement on behalf of all persons who use the [Comcast] Equipment and/or Service(s) at the Premises[4] and that you shall have sole responsibility for ensuring that all other users understand and comply with the terms and conditions of this Agreement . . . .

---

[4] The Subscriber Agreement defines "Premises" as the "property at which the Service(s) and/or [Comcast] Equipment will be provided." (Ex. A § 5(a).)

(*Id.* § 7.)

## II.    THE SUBSCRIBER AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION.

The first page of the Agreement gives conspicuous notice of the Arbitration Provision, stating in part:

> **Note:  THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICE(S).**

(*Id.* (emphasis and typography in original).)

Section 13 of the Subscriber Agreement contains the Arbitration Provision, titled "**BINDING ARBITRATION.**"  (*Id.* § 13 (emphasis and typography in original).)  Section (a) of the Arbitration Provision states: "Any Dispute involving you and Comcast shall be resolved through individual arbitration."  (*Id.* § 13(a).)  The Arbitration Provision defines "you" to mean "you and any **users** or **beneficiaries** of the Service(s)."  (*Id.* § 13(b) (emphasis added).)  And the Arbitration Provision defines "Dispute" broadly, meaning "any claim or controversy related to Comcast."  (*Id.*)[5]  Further, the Arbitration Provision "survive[s] the termination of your Service(s) with us."  (*Id.* § 13(k).)

Comcast provided Foust, Austin, and Elaine with an opportunity to opt out of the Arbitration Provision.  (*Id.* § 13(d).)  None of them ever did so.  (Patel Decl. ¶¶ 14–15.)

---

[5] The Arbitration Provision's definitions state in full: "This Arbitration Provision shall be broadly interpreted. 'Dispute' means any claim or controversy related to Comcast, including but not limited to any and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise; (2) claims that arose before this or any prior Agreement; (3) claims that arise after the expiration or termination of this Agreement, and (4) claims that are currently the subject of purported class action litigation in which you are not a member of a certified class.  As used in this Arbitration Provision, 'Comcast' means Comcast and any of its predecessors, successors, assigns, parents, subsidiaries, and affiliates, and each of their respective officers, directors, employees and agents, and 'you' means you and any users or beneficiaries of the Service(s)."  (Ex. A § 13(b).)

5

# ARGUMENT

## I. THE COURT SHOULD COMPEL FOUST'S CLAIMS TO ARBITRATION.

The parties must arbitrate Foust's claims pursuant to the FAA. "When considering a motion to compel arbitration [under the FAA], a court has four tasks." *Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 936 (E.D. Tenn. 2017) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714.

Answering the four *Stout* inquiries here confirms that arbitration is required. *First*, Foust agreed to be bound by the Arbitration Provision because he used Comcast's services. *Second*, Foust's claims fall within the scope of the Arbitration Provision, which broadly covers any "Dispute" between the parties—including claims under the TCPA. *Third*, Congress intended TCPA claims to be arbitrated. And *fourth*, no claims remain for this court to resolve, so dismissal pending arbitration—not a stay—is appropriate.

### A. The FAA governs the arbitrability of Foust's claims.

The threshold issue for analyzing the four *Stout* inquiries is whether the FAA controls. Arbitration agreements must meet only two conditions for the FAA to apply: (1) they must be in writing, and (2) they must be part of "a contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. Agreements that satisfy both requirements are "valid, irrevocable, and enforceable" under federal law. *Id.*; *see also Jacobs Field Servs. N. Am., Inc. v. Wacker Polysilicon N. Am., LLC*, 375 F. Supp. 3d 898, 912 (E.D. Tenn. 2019).

Both elements are satisfied here. Foust's agreement is in writing—the Subscriber Agreement—and it evidences a transaction in interstate commerce: providing interstate telecommunications services. Further, the Arbitration Provision specifies that it is governed by the FAA. *See* Patel Decl., Ex. A § 13(g) ("This Arbitration Provision shall be governed by the Federal Arbitration Act."). The FAA therefore applies.

"A party opposing a motion to compel arbitration faces a heavy burden once a court determines that the FAA applies." *Ambrose v. Comcast Corp*, 2010 WL 1270712, at *3 (E.D. Tenn. Mar. 31, 2010). The FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements" and to place them on "the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms."); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (describing the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements" (citation omitted)); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution"); *Blackburn v. Capital Transaction Grp., Inc.*, No. 2:13-CV-98, 2014 WL 923316, at *3 (E.D. Tenn. Mar. 10, 2014) (citing *Gilmer*, 500 U.S. at 25)). "Moreover, the provisions of the FAA are mandatory: "[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Jacobs Field Servs.*, 375 F. Supp. 3d at 912 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original).

7

### B. Foust agreed to arbitrate his disputes with Comcast.

Under the first *Stout* inquiry, and as noted above, Foust is bound by the Arbitration Provision for two reasons. First, he accepted the Subscriber Agreement, including its arbitration provision, through his use of Comcast's services. Second, even if Foust did not accept the Arbitration Provision, he is bound by it because he is in privity with Austin and Elaine, who also accepted the Arbitration Provision.

#### i. *Foust accepted the Arbitration Agreement by using Comcast's services.*

Comcast delivered internet service to Foust's residence from March 1, 2017, through May 28, 2017, and Comcast received payment for that service. (Patel Decl. ¶ 16.) That use constituted Foust's acceptance of the Subscriber Agreement, including the Arbitration Provision. (Ex. A § 1 ("You will have accepted this Agreement and be bound by its terms if you use the Service(s) or otherwise indicate your affirmative acceptance of such terms."); *id.* § 7 ("[Y]ou are accepting this Agreement on behalf of all persons who use the [Comcast] Equipment and/or Service(s) at the Premises.").)

The Sixth Circuit has consistently enforced arbitration agreements that provide for acceptance through use—even when a party does not sign the agreement. "[U]nlike contracts that fall under the Statute of Frauds, arbitration agreements under the FAA need to be written, but not necessarily signed." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007); *see also Ambrose*, 2010 WL 1270712, at *3 (E.D. Tenn. Mar. 31, 2010) (same). In *Ambrose*, a Comcast customer opposed arbitration of his claims under the theory that he had not read or signed the arbitration agreement that Comcast had mailed to his residence, and thus that there had been no "meeting of the minds." *Id.* at *3. A court in this District rejected that theory and compelled arbitration: "Under Tennessee law [and the FAA] . . . it was not necessary for plaintiff to sign or

read the arbitration provision in order for that provision to be enforceable." *Id.* What mattered was that the plaintiff had kept using Comcast's service. *Id.*

Courts across the country have reached the same conclusion as the court in *Ambrose* and have compelled arbitration under Comcast's Arbitration Provision based on a customer's use of Comcast's services. *See, e.g.*, *O'Neil v. Comcast Corp.*, 2019 WL 952141, at *3 (N.D. Ill. Feb. 27, 2019) ("Because she used the 'service' to which these agreements refer, she accepted Defendants' offer according to its exact terms."); *Montoya v. Comcast Corp.*, No. 15-2573, 2016 WL 5340651, at *5 (E.D. Cal. Sept. 23, 2016) (finding that plaintiffs used Comcast services "and therefore accepted its terms," including the arbitration agreement); *Jordan v. Comcast Cable Commc'ns Mgmt., LLC*, No. 14-3622, 2016 WL 452145, at *5–6 (N.D. Ga. Feb. 4, 2016) (compelling former subscriber's claim to arbitration where Comcast showed routine and regular business practice of providing customers with the Subscriber Agreement in a Welcome Kit, and plaintiff "utilized Comcast's services").

### ii. *Foust is bound by the Arbitration Provision through his privity with Austin and Elaine.*

Foust is also bound by the Arbitration Provision because he is in privity with Austin and Elaine by virtue of their mutual interests. Austin and Elaine assented to the terms of the Subscription Agreement, including the Arbitration Provision; not only did they both use the service, but Austin opened the Comcast account under his name, and Elaine was an authorized user on the account. (Patel Decl. ¶¶ 8–10.) Because Foust is in privity with Austin and Elaine for purposes of this lawsuit, Foust is bound by the Arbitration Provision to the same degree as they are. *See Reo v. Palmer Admin. Servs.*, 2019 WL 2306641, at *2 (6th Cir. May 30, 2019).

In *Reo*, the district court compelled arbitration against a TCPA plaintiff based on an arbitration agreement signed by his son. After the son threatened to sue the defendant for alleged

9

TCPA violations, the son and defendant signed a settlement agreement that contained an arbitration agreement for any future claims. Two years later, the father sued the defendant for alleged TCPA violations. The district court held—and the Sixth Circuit very recently affirmed— that the father was bound by the son's arbitration agreement because they were "in privity with one another under Ohio law." *Id.* at *2. Specifically, the father and son were in privity because they "share[d] an address and a telephone landline, and both [sought] to prevent future calls from [defendant]." *Id.* And because the father sought to enjoin the defendant from calling the landline he shared with his son, they had a "mutuality of interest" that put them in privity. *Id.* ("Ohio courts have defined privity as simply '[t]he connection or relation between two parties, each having a legally recognized interest in the same subject matter' and 'mutuality of interest.'").[6]

Just as in *Reo*, Foust is in privity with Austin and Elaine—his son-in-law and daughter. When Austin and Elaine opened a Comcast account and accepted the Subscription Agreement, they lived in the same house as Foust and shared a telephone number with him (the 8123 number). (Patel Decl. ¶¶ 8, 21, 23.) When Foust answered the call from Comcast on March 20, 2018, not only did he ask Comcast to stop calling the 8123 number—Elaine also called Comcast the same day to request that Comcast no longer call the 8123 number. (*Id.* ¶¶ 22, 25.) The mutuality of interest here—for example, a shared telephone number and shared interest in ending calls to the 8123 number—puts this case on all fours with *Reo*. Foust cannot sidestep the Arbitration Provision by strategically suing in his own name; his privity with Austin and Elaine binds him to the Arbitration Provision to the same extent as they are bound.

---

[6] Although *Reo* was decided under Ohio law, Tennessee courts have also defined privity in the same way—as a "mutuality of interest." *Ambrose Assocs. v. Musselman*, 2003 WL 22251350, at *3 (Tenn. Ct. App. Oct. 2, 2003) ("Privity is defined as 'Derivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest.'" (quoting Black's Law Dictionary, 6th Ed., 1990)); *Collier v. Greenbrier Developers, LLC*, 358 S.W.3d 195, 200 (Tenn. Ct. App. 2009) (same).

Finally, because of the "liberal federal policy favoring arbitration," any doubt or ambiguity about whether Foust agreed to arbitrate "should be resolved in favor of arbitration." *Reo*, 2019 WL 2306641, at *3. *See also Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) ("It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration.").

## C.     The scope of the Arbitration Provision covers Foust's claims.

Under the second *Stout* inquiry, Foust's claims fall within the scope of the Arbitration Provision. Foust brings two claims against Comcast for allegedly violating the TCPA by calling his cell phone without his consent. *See, e.g.*, Cmplt. ¶¶ 1–2. Foust also seeks to represent a putative class for those same claims. *Id.* ¶ 28. Foust's claims plainly fall within the scope of the Arbitration Provision, which covers "[a]ny Dispute involving you and Comcast." (*Id.* § 13(a).)

To begin, Foust's claims involve "you" (Foust) and Comcast. The Arbitration Provision defines "you" to mean "you and any users or beneficiaries of the Service(s)." (*Id.* § 13(b).) Foust used and/or benefitted from Comcast's internet service when Comcast delivered it to his home from March through May 2017.[7]

Further, the Arbitration Provision defines "Dispute" broadly, meaning "any claim or controversy related to Comcast," including any claims based on "statute" and "claims that are currently the subject of purported class action litigation." (*Id.*) This putative TCPA class action squarely fits that definition.

---

[7] Foust alleges that Comcast called his cell phone in "late 2017 or early 2018"—after service was transferred away from his residence in May 2017. *See* Cmplt. ¶ 13. But the Arbitration Provision covers "claims that arise after the expiration or termination of this Agreement." (Ex. A § 13(b)(3).) And the Arbitration Provision "survive[s] the termination of your Service(s) with Comcast." (*Id.* § 13(j).)

11

**D.    Congress intended for TCPA claims to be arbitrated.**

Under the third *Stout* inquiry, Courts within the Sixth Circuit have unanimously concluded that Congress intended for TCPA claims to be arbitrated.  *See Drozdowski v. Citibank, Inc.*, 2016 WL 4544543, at *9 (W.D. Tenn. Aug. 31, 2016) (finding that numerous courts have examined Congress's intent for arbitrability of TCPA claims and none have found that Congress intended TCPA claims to be nonarbitrable); *Treinish v. BorrowersFirst, Inc.*, 2017 WL 3971854, at *4 (N.D. Ohio Sept. 8, 2017) (same).

**E.    The Court should dismiss Foust's claims while the parties pursue arbitration.**

The final *Stout* inquiry concerns whether a court should stay the litigation pending arbitration if only some claims are arbitrable.  That inquiry does not apply here because both of Foust's claims fall within the scope of the Arbitration Provision.  The Court should therefore dismiss this action while the parties arbitrate Foust's claims.  In the Sixth Circuit, "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."  *Harris*, 2015 WL 64880, at *5 (E.D. Tenn. Jan. 5, 2015) (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)); *see also CalsonicKansei N. Am., Inc. v. Randstad U.S., LP*, 2013 WL 12213849, at *3 (E.D. Tenn. Sept. 11, 2013) ("The Sixth Circuit . . . has held that a court may also dismiss the action if all the claims are arbitrable.").

**II.    THE COURT SHOULD STAY DISCOVERY PENDING ITS DECISION ON COMCAST'S MOTION.**

The Court should stay discovery pending its decision on Comcast's Motion to Compel Arbitration.  In its May 15, 2019 Order, the Court ordered the parties to (1) meet and confer under Federal Rule of Procedure 26 after Comcast responds to the Complaint, and (2) file a written report outlining the discovery plan no later than seven days after Comcast's response.  (Dkt. 8.)  Plaintiff also has already served Comcast with interrogatories and requests for production.  Yet Foust and

12

Comcast agreed to arbitrate their disputes in part to avoid costly and burdensome discovery. If Comcast is forced to participate in discovery before the Court ultimately compels Foust's claims to arbitration, Comcast will have lost the benefit of its bargain with Foust. A stay of discovery is therefore appropriate.

District courts have significant discretion to stay discovery pursuant to their inherent power to manage their dockets. *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 n.6 (1998) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (citation omitted)). Courts within this Circuit routinely exercise that discretion to stay discovery pending resolution of a motion to compel arbitration; indeed, these courts have recognized a "rule favoring a stay of discovery while a motion to compel arbitration is pending." *Danley v. Encore Capital Grp., Inc.*, 2016 WL 8115421, at *2 (E.D. Mich. Apr. 20, 2016); *see also Hubbell v. NCR Corp.*, 2018 WL 1638882, at *2 (S.D. Ohio Apr. 5, 2018) (staying all discovery pending defendant's motion to compel).

The reason for this rule is sound: because of the "strong presumption in favor of arbitration," parties should be "protected from the expense of litigation" in case they "prevail in compelling arbitration." *Hubbell*, 2018 WL 1638882, at *1; *see also Danley*, 2016 WL 8115421, at *2 ("Should defendants prevail in compelling arbitration, they will be protected from the expense of litigation in this court."). As one court explained:

> [A]llowing discovery to proceed could alter the nature of the dispute significantly by requiring parties to disclose sensitive information that could have a bearing on the resolution of the matter. If we later hold that the claims were indeed subject to mandatory arbitration, the parties will not be able to unring any bell rung by discovery, and they will be forced to endure the consequences of litigation discovery in the arbitration process.

*Hubbell*, 2018 WL 1638882, at *1 (quoting *Levin v. Alms & Associates, Inc.*, 634 F.3d 260, 265 (4th Cir. 2011)). Moreover, "[t]he burden of litigation includes not just time and financial resources, but also the possible disclosure of sensitive information." *Hubbell*, 2018 WL 1638882, at *1.

The risks and burdens of discovery are especially acute when, as here, a party seeks broad class discovery. Foust has propounded three interrogatories and 13 requests for production of documents, nearly all of which seek discovery related to the putative class claims. (Patel Decl. ¶ 27 (attaching discovery requests as Exhibit B).) If Comcast is forced to respond to these discovery requests, it will lose the benefit of its bargain to pursue arbitration on an individual basis and with limited discovery. (Ex. A, Arbitration Provision, § 13(a) ("In arbitration, there is no judge or jury and there is less discovery and appellate review than in court."); § 13(h) ("THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION, JOINT OR CONSOLIDATED BASIS . . . .").) As one court explained:

> Proceeding with discovery before determining which claims are arbitrable or subject to class action waivers would allow Plaintiffs to obtain extensive discovery on class-wide issues. Yet much of this information will be irrelevant to individual arbitrations. Such voluminous discovery will likely be costly in terms of money and time. Without a temporary stay, [defendant's] potential right to have an arbitrator manage discovery would be negated.

*In re CenturyLink Sales Practices & Sec. Litig.*, 2018 WL 2122869, at *2 (D. Minn. May 8, 2018); *see also Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 190–91 (2d Cir. 1999) ("The popularity of arbitration rests in considerable part on its asserted efficiency and cost-effectiveness—characteristics said to be at odds with full-scale litigation in the courts, and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure.").

14

While Comcast would bear significant burdens and risks by proceeding with class-wide discovery, Foust would suffer little prejudice from a brief stay pending the Court's resolution of Comcast's Motion to Compel. *See Danley*, 2016 WL 8115421, at *2 (rejecting plaintiffs' argument that they would be prejudiced by delay because "such delay is an inherent consequence of the rule favoring a stay of discovery while a motion to compel arbitration is pending"). Indeed, Foust may even benefit from a stay, as he may avoid having to "change course in [his] discovery plan" depending on whether his class claims are prohibited. *CenturyLink*, 2018 WL 2122869, at *2 (quoting *Roadbuilders Mach. Supply Co. v. Sennebogen, Inc.*, 2012 WL 1253265, at *2 (D. Kan. Apr. 13, 2012)).

Further, Foust has shown little urgency in prosecuting his alleged claims; he filed his Complaint on March 25, 2019, a full year after allegedly receiving calls from Comcast in March 2018. (Cmplt. ¶ 13.) Any *de minimis* harm to Foust from a brief stay is significantly outweighed by the substantial prejudice Comcast will suffer if forced to participate in discovery, class or otherwise, in contravention of the parties' binding Arbitration Provision.

The Court should therefore stay discovery pending its resolution of Comcast's Motion to Compel Arbitration.

## III. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE CLAIMS OF NON-TENNESSEE PUTATIVE CLASS MEMBERS.

If the Court does not compel Foust's claims to arbitration, it should dismiss the claims of putative class members who do not reside in Tennessee and who have no connection to Tennessee.[8]

---

[8] Some courts have held that a motion to dismiss the claims of putative class members is not ripe until a class is certified. *See, e.g.*, *Suarez v. California Nat. Living, Inc.*, 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019) ("[T]he Court need not assess personal jurisdiction over plaintiff's putative out-of-state class action claims unless and until the Court decides a class compromising out-of-state class members merits certification."); *Jones v. Depuy Synthes Prod., Inc.*, 330 F.R.D. 298, 312 (N.D. Ala. 2018) (same). Even so, Comcast brings this Motion to preserve its argument that the Court lacks personal jurisdiction over non-Tennessee putative class members. *See* Fed. R. Civ. P. 12(h)(1) (failure to raise personal jurisdiction defense in first responsive pleading results in waiver).

Foust seeks to certify a nationwide fail-safe class comprising "[a]ll persons within the United States who, on or after [DATE], received a nonemergency call from defendant to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls." Cmplt. ¶ 29 (brackets in original). That class, if certified, may include members who received calls outside the State of Tennessee, and whose claims have no connection to Tennessee (called hereafter "non-Tennessee claims"). The non-Tennessee claims should be dismissed because the Court lacks personal jurisdiction over Comcast for those claims.

A.    **The law of personal jurisdiction.**

Tennessee law governs whether this Court can exercise personal jurisdiction over Comcast. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists [1] if the defendant is amenable to service of process under the [forum] state's long-arm statute and [2] if the exercise of personal jurisdiction would not deny the defendant[] due process." (quotation marks omitted)); *see also* Fed. R. Civ. P. 4(k)(1)(A). Because "[t]he Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause," courts "address only whether exercising personal jurisdiction over [defendant] is consistent with federal due process requirements." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

Under the Due Process Clause, the Supreme Court recognizes "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779–80 (2017). As the parties asserting jurisdiction, Foust and

16

the putative class members bear the burden of establishing this Court's jurisdiction over Comcast for their claims. *Bridgeport*, 327 F.3d at 478.

### B.     The Court lacks general jurisdiction over Comcast.

To establish general jurisdiction over Comcast, Foust would have to show that Comcast's contacts with Tennessee are so "continuous and systematic as to render [Comcast] essentially at home in [Tennessee]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Essentially at home" means that "only a limited set of affiliations with the forum"— namely Tennessee's "place of incorporation and principal place of business"—will support general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Outside those two paradigm affiliations, general jurisdiction may be exercised only in "exceptional cases"—namely, where the corporation's activities in the forum closely approximate the activities that ordinarily characterize a "corporation's place of incorporation or a principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1553 (2017); *see also McKevitz v. Capital All. Grp.*, 2019 WL 1318245, at *4 (E.D. Tenn. Mar. 22, 2019).

Comcast fits none of the requirements for general jurisdiction in Tennessee. Comcast is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.[9] (Patel Decl. ¶ 4.) Nor is this an "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" are "so substantial and of such a nature as to render the corporation" at home in Tennessee. *Daimler AG*, 571 U.S. at 139 n.19 (citing as the *only* example of such an exceptional case, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952), where company effectively relocated to the state of Ohio from the Philippines during World War II). Indeed, in *BNSF*, the Supreme Court held that the defendant

---

[9] The proper defendant to this action, Comcast Cable Communications, LLC, is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. (Patel Decl. ¶ 5.)

17

was not subject to general jurisdiction in Montana despite having more than 2,000 employees and more than 2,000 miles of track there. 137 S. Ct. at 1559; *see also Daimler AG*, 571 U.S. at 138–39 (declining to extend general jurisdiction "to every other State in which [the defendant's] sales are sizable"). Thus, the fact that Comcast conducts business in Tennessee, as it does in many other states, is far from enough to permit the exercise of general jurisdiction here. As the Supreme Court recognized, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG*, 571 U.S. at 139 n.20.

**C.      The Court lacks specific jurisdiction over Comcast for non-Tennessee claims.**

For specific personal jurisdiction to exist, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S. Ct. at 1780. Thus, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted).

Here, the Complaint alleges jurisdiction exists because "a substantial part of the events or omissions giving rise to this cause of action accrued in Knox County, Tennessee, where [Comcast] transacts business." Cmpl. [ECF No. 1] ¶¶ 5, 6. In other words, Foust asserts that jurisdiction is proper because (1) Comcast directed its calls to Foust in Tennessee, and (2) Comcast transacts business in Tennessee. The second basis is only relevant to general jurisdiction, which does not exist here. The first basis is specific to Foust's TCPA claim, and perhaps to the TCPA claims of other putative class members who received calls in Tennessee. But these allegations are plainly not enough to assert specific jurisdiction over *non*-Tennessee claims, such as those of class members who do not reside in Tennessee, whom Comcast did not call in Tennessee, and who otherwise lack any connection to Tennessee. *See Bristol-Myers*, 137 S. Ct. at 1780.

### D. The due process requirements for personal jurisdiction apply equally to class actions.

Foust is not relieved of his obligation to establish specific personal jurisdiction over Comcast simply because he seeks to represent a putative class. In *Bristol-Myers*, the Supreme Court held that a California court lacked personal jurisdiction over a non-California corporation in analogous circumstances. *Bristol-Myers* was a mass-tort case brought against Bristol-Myers Squibb Co. ("BMS") by over 600 plaintiffs, most of whom were not California residents. The Supreme Court held that the California court lacked personal jurisdiction over BMS for the nonresidents' claims because BMS is neither incorporated nor headquartered in California and "[t]he relevant plaintiffs are not California residents and do not claim to have suffered harm in that State." 137 S. Ct. at 1782. That the nonresidents' claims were like the residents' claims was legally irrelevant. *Id.* As the Supreme Court held: "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781 (emphasis in original).

Although *Bristol-Myers* was a mass action, its rationale and due process apply equally to class actions. The Sixth Circuit has not decided whether *Bristol-Myers* applies to class actions, and three district courts within the Sixth Circuit have reached opposite conclusions on that issue. *Compare Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850–51 (N.D. Ohio 2018) (*Bristol-Myers* applies to collective actions under the Fair Labor Standards Act), *with Hosp. Auth. of Metro. Govt. of Nashville v. Momenta Pharm., Inc.*, 353 F. Supp. 3d 678, 692 (M.D. Tenn. 2018) (*Bristol-Myers* does not apply to class actions), *and Lyngaas v. Curaden AG*, No. 17-CV-10910, 2019 WL 2231217, at *18 (E.D. Mich. May 23, 2019) (same).

Be that as it may, this Court should follow the many courts nationwide that have extended the holding in *Bristol-Myers* to the class-action context.[10] The federalism and due process concerns that led the Supreme Court to hold that there must be "a connection between the forum and the specific claims at issue" in the mass-action context apply with equal force to nationwide class actions. The "constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class." *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (finding plaintiffs' argument that the "due process holdings in *Bristol-Myers* ha[ve] no effect on the law in class actions because the case before the Supreme Court was not a class action" to be "flawed").

The Court should not follow the decisions of those courts that have declined to apply *Bristol-Myers* to class actions. While these courts have identified distinctions between mass and class actions, these distinctions do not amount to "meaningful differences" between mass and class actions—and they cannot override Comcast's due process rights. *See Practice Mgmt.*, 301 F. Supp. 3d at 861–62 (court could not "distinguish the Supreme Court's basic holding in *Bristol-Myers* simply because this is a class action" because "a defendant's due process interest should be the same in the class context").

Due process requires Foust to establish that Comcast is subject to the Court's general personal jurisdiction or specific personal jurisdiction for the non-Tennessee claims. Because the Complaint fails to make that showing, the Court should dismiss those claims.

---

[10] *See, e.g.*, *Mussat v. IQVIA Inc.*, 2018 WL 5311903, at *5 (N.D. Ill. Oct. 26, 2018) (applying "core reasoning" from *Bristol-Myers* to strike nationwide class allegations from TCPA putative class action because "whether it be an individual, mass, or class action, the defendant's rights should remain constant"); *In re Dicamba Herbicides Litig.*, 2019 WL 460500, at *6 (E.D. Mo. Feb. 6, 2019) ("[*Bristol-Myers*] applies with equal force in the class action context."); *Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.*, 301 F. Supp. 3d 840, 866 (N.D. Ill. 2018) (finding that *Bristol-Myers* extends to TCPA class actions and "prevents [the court] from exercising personal jurisdiction over defendants with respect to the claims of non-Illinois-resident class members"); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849–50 (N.D. Ohio Mar. 26, 2018) ("The Court finds that *Bristol-Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of non-Ohio plaintiffs against Reliable.").

## CONCLUSION

For these reasons, the Court should issue an order (1) compelling arbitration of Foust's claims, and (2) staying discovery pending the Court's resolution of Comcast's Motion. In the alternative, the Court should dismiss the claims of putative class members who do not reside in Tennessee and who have no connection to Tennessee.

Dated: July 15, 2019

Respectfully submitted,

**Comcast Corporation**

By:   /s/ Sean G. Wieber
     One of its attorneys

**WINSTON & STRAWN LLP**
Sean G. Wieber (*pro hac vice*)
swieber@winston.com
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700

-and-

**MOORE INGRAM JOHNSON & STEELE, LLP**
William R. Johnson
Tennessee BPR No. 19925
wrj@mijs.com
Austin Gillis
Tennessee BPR No. 033130
dagillis@mijs.com
408 N. Cedar Bluff Road, Suite 500
Knoxville, TN 37923
Tel: (770) 429-1499
Fax: (865) 692-9071

*Counsel for Comcast Corporation*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of July, 2019, the foregoing was delivered to all counsel of record through the Court's electronic filing system.

MOORE INGRAM JOHNSON & STEELE, LLP


*/s/ D. Austin Gillis*
Austin Gillis
Tennessee BPR No. 033130
dagillis@mijs.com