CLARENCE FOUST, on behalf of himself and    )
those similarly situated,    )
   )
       Plaintiff,    )
   )
v.    )      No. 3:19-CV-173-HSM-DCP
   )
COMCAST CORPORATION, et al.,    )
   )
       Defendants.    )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 44] of the District Judge.

Now before the Court is a Motion to Stay Briefing on Motion to Compel Arbitration Pending Limited Arbitral Discovery [Doc. 31], filed by Defendant Comcast Corporation ("Comcast" or "Defendant"). The District Judge stayed the briefing as to arbitrability and only referred the portion of [Doc. 31] pertaining to Defendant's request for limited arbitral discovery to the undersigned for report and recommendation. [Doc. 44.]. Plaintiff responded in opposition [Doc. 39] to the Motion, and Defendant replied [Doc. 43]. The Motion is now ripe for adjudication. Accordingly, for the reasons more fully explained below, the Court **RECOMMENDS** that Defendant's Motion for limited arbitral discovery [**Doc. 31**] be **GRANTED**.

## I. BACKGROUND

The Complaint in this case was removed from the Circuit Court of Knox County, Tennessee, to this Court on May 13, 2019. [Doc. 1]. Subsequently, Plaintiff filed a Second Amended Complaint. [Doc. 50]. The Second Amended Complaint alleges that Plaintiff had a cellular telephone number ending in 8123. [*Id.* at ¶ 15]. Beginning in late 2017 or early 2018,

Plaintiff began receiving calls from Comcast and Defendant Complete Recovery Corporation, on behalf of Comcast, on his cellular telephone. [*Id.* at ¶¶ 16-19]. Plaintiff states that the purpose of the calls was to attempt to collect equipment or other debt allegedly owed to Comcast. [*Id.* at ¶ 24]. Plaintiff, alleges, however, that he was not a customer of Comcast in 2017 or 2018. [*Id.* at ¶ 25]. In addition, he did not have any of Comcast's equipment or otherwise owe Comcast a debt in 2017 or 2018. [*Id.* at ¶ 26].

The Second Amended Complaint avers that Plaintiff told Defendants' representatives that he was not a customer, he did not have any of Comcast's equipment, and he did not owe a debt. [*Id.* at ¶ 27]. He also asked Defendants' representatives to stop calling him. [*Id.*] Plaintiff states that he continued to receive numerous calls on his cellular telephone from Defendants. [*Id.* at ¶ 28]. The Second Amended Complaint alleges that the calls were repeated, annoying, intrusive, and harassing. [*Id.* at ¶ 29].

The Second Amended Complaint states that many, if not all, calls by Defendants to Plaintiff's cellular telephone number occurred via an automatic telephone dialing system or used an artificial or prerecorded voice. [*Id.* at ¶ 30]. Plaintiff states that he did not provide his cellular telephone number during a transaction that resulted in a debt owed to Comcast. [*Id.* at ¶ 34]. He further avers that he did not provide prior express consent to receive autodialed or prerecorded calls from Defendants on his cellular telephone. [*Id.* at ¶ 35]. He requested several times that Defendants stop calling his cellular telephone. [*Id.* at ¶ 36].

The Second Amended Complaint seeks certification of a class action, using the following definition:

> All persons within the United States, who, on or after March 25, 2015, received a non-emergency call from any defendant to a cellular telephone through the use of an automatic telephone dialing

> system or an artificial or prerecorded voice and who did not provide,
> or who revoked, prior express consent for such calls.

[*Id.* at ¶ 40].

The Second Amended Complaint alleges that Defendants' actions violate the Telephone Consumer Protection Act ("TCPA"). [*Id.* at ¶¶ 50-60].

After removing the original Complaint to this Court, Defendant moved to compel arbitration and to stay discovery pending a decision on whether this case should be arbitrated. [Docs. 13, 28, 36, 53].[1] Comcast argues, in part, that it did have consent to call Plaintiff's cell phone. Comcast submits evidence showing that Plaintiff's son-in-law and daughter signed up for Comcast's services at Plaintiff's home, where they were apparently living at the time. Comcast states that when opening the Comcast account, Plaintiff's son-in-law provided Plaintiff's cellular telephone number, ending in 8123. Comcast states that Plaintiff later admitted in a recorded call that he was allowing his son-in-law to use his cellular telephone number during that time to sign up for services. Therefore, Comcast argues that the Court should compel arbitration because it has a written Subscriber Agreement with Plaintiff that requires arbitration. Comcast states that Plaintiff accepted the Subscriber Agreement through the use of Comcast's services. Comcast further states that if Plaintiff did not accept the arbitration provision, he is bound by it because he is in privity with his daughter and son-in law, who accepted the arbitration provision.

In response to Comcast's original request to compel arbitration [Doc. 13], Plaintiff filed a declaration [Doc. 30-1], claiming that he has never used Comcast's internet services at his residence. [*Id.* at ¶ 3]. He further states that he has never been a Comcast subscriber, account holder, or authorized user in connection with internet services installed at his residence. [*Id.* at ¶

---

[1] The Court notes that Comcast filed multiple motions to compel arbitration given the filing of several amended Complaints [Doc. 18, 50]. The District Judge denied [Docs. 13, 28, and 36] as moot. [Doc. 56]. Thus, the only pending motion to compel is [Doc. 53].

8]. Finally, he submits that he has never received a Comcast subscriber agreement, arbitration agreement, or other form of Comcast customer agreement at his residence, nor has he ever been aware of the existence of such an agreement at his residence. [*Id.* at ¶ 9].

Comcast now moves [Doc. 31] to conduct limited discovery into the factual issues raised in Plaintiff's declaration. After filing the instant Motion, Comcast filed another motion to compel arbitration [Doc. 36].[2] Thereafter, the District Judge stayed briefing on Comcast's motion to compel arbitration so that the undersigned could consider Comcast's Motion [Doc. 31] for limited discovery. Later, on October 7, 2019, Plaintiff filed a Second Amended Complaint [Doc. 50]. In response to the Second Amended Complaint, Comcast filed another motion to compel arbitration [Doc. 53]. As mentioned above, the District Judge denied the previous motions to compel arbitration as moot. [Doc. 56].[3]

On December 20, 2019, the undersigned conducted a telephonic status conference with the parties. Attorney Ben Miller appeared on behalf of Plaintiff, and Attorney Donald Gillis appeared on behalf of Defendant Comcast. During the telephonic status conference, Plaintiff stated that he initially wanted to proceed with discovery, but after filing his response [Doc. 30] to Defendant's original motion to compel, he did not believe discovery was necessary. Plaintiff stated that he was unsure whether to refile his original response [Doc. 30], given that the District Judge entered a stay with respect to briefing the motion to compel arbitration. Plaintiff stated that he intended to rely on his original response [Doc. 30]. Defendant requested limited discovery in the form of interrogatories, document production, and depositions.

---

[2] It is not clear to the Court why Comcast filed its third motion to compel [Doc. 36] as this motion was not prompted by an amended Complaint, unlike the other motions to compel.

[3] *See supra* note 1.

4

## II.      POSITIONS OF THE PARTIES

Defendant asserts [Doc. 31] that the Court should not decide its motion to compel solely based on Plaintiff's untested assertions in his declaration without the benefit of discovery. Comcast states that limited discovery will enable it and the Court to determine whether Plaintiff has submitted facts that truly put the application and enforceability of the arbitration agreement at issue.  For instance, Comcast states that in order to evaluate Plaintiff's assertion that he never used Comcast's internet services, Comcast would propound written discovery inquiring into the electronic devices in Plaintiff's home during the relevant period.  Comcast would also like depositions of Plaintiff, Plaintiff's daughter, and Plaintiff's son-in law.  Comcast states that it would probe the efforts of the daughter and son-in-law to end collection calls to Plaintiff's cell phone and the details of the shared living arrangements for those three individuals, which are relevant factors in the privity analysis.

Plaintiff argues [Doc. 39] that Comcast cannot meet its initial burden of establishing a valid agreement to arbitrate and that it should not be permitted to go on a fishing expedition after the fact.  Further, Plaintiff states that Comcast's motion to compel arbitration fails as a matter of law and discovery will not change the outcome.  Plaintiff states that regardless of whether he used Comcast's services, the motion to compel fails, making a request for discovery moot.  Plaintiff provides the following reasons as to why the motion to compel should be denied: (1) a non-signatory beneficiary who does not seek to enforce the underlying agreement cannot be bound by an arbitration clause; (2) Comcast's argument that it can bind all alleged beneficiaries of its service raises policy concerns because of the absurd implications; (3) Plaintiff opted out of the arbitration clause pursuant to its own terms; and (4) the arbitration clause is unconscionable.

Comcast responds [Doc. 43] that it has shifted the burden to Plaintiff by submitting prima facie evidence of a valid arbitration agreement, including the agreement itself and a sworn declaration. Comcast states that it is entitled to conduct discovery into Plaintiff's assertions. Comcast argues that a party may accept the agreement by using the services provided thereunder. Comcast states that it delivered internet service to Plaintiff's home address from March through May 2017, Plaintiff's son-in-law provided Plaintiff's cell phone number when setting up the Comcast account, and that Plaintiff authorized his son-in-law to use his cell phone. Further, Comcast states that Plaintiff is bound by the arbitration agreement through his privity with his daughter and son-in-law because all three people shared a residence, a cell phone number, and an interest in ending Comcast's calls to that number. Comcast states that it would be inefficient for the parties to brief Comcast's motion based on assumptions about what the facts might be, and for the Court to rule on the motion in a piecemeal fashion.

## III.   ANALYSIS

"When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Pursuant to the FAA, "a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate." *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 487 (6th Cir. 2001) (citation omitted). As the movant for arbitration, Comcast must come forward with some evidence showing that Plaintiff agreed to the arbitration agreement. *See Heath v. Virginia Coll., LLC*, No. 3:17-CV-366-HSM-DCP, 2018 WL 5317929, at *4 (E.D. Tenn. July 2, 2018) (citing *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. 2016))

(other citations omitted), *report and recommendation adopted*, 2018 WL 4521027 (E.D. Tenn. Sept. 21, 2018). "[O]nce prima facie evidence of the agreement has been presented, the burden shifts to the party opposing arbitration." *Id.* (citing *Arnold*, 2016 WL 502061, at *3) (other citations omitted). "A party meets the prima facie burden of establishing an arbitration agreement by providing copies of a written and signed agreement to arbitrate." *Id.* (citing *Arnold*, 2016 WL 502061, at *3) (other citations omitted).

The Sixth Circuit has applied the summary judgment standard under Federal Rule of Civil Procedure 56 when ruling on a motion to compel arbitration. *See Great Earth Cos. Inc., v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("[T]he party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard."). Because the analysis of a motion to compel arbitration mirrors the summary judgment standard, the Court will look to Rule 56(e) for guidance with respect to the instant issue.[4] Specifically, Rule 56(e) provides as follows:

> **(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> >
> > (2) consider the fact undisputed for purposes of the motion;

---

[4] The Court notes that in *Heath*, the undersigned relied on Rule 56(d), explaining that "at least one other court . . . utilize[d] Rule 56(d) when analyzing a motion requesting arbitration-related discovery." *Heath*, 2018 WL 5317929, at *5 (citing *AT&T Mobility Servs. LLC v. Payne*, No. 3:17-CV-00649-CRS, 2018 WL 476163, at *1 (W.D. Ky. Jan. 18, 2018)). In *Heath*, however, the party requesting arbitration-related discovery did not move to compel arbitration. *See* Fed. R. Civ. P. 56(d) ("when facts are unavailable to the *nonmovant*") (Emphasis added). Here, Comcast, the party requesting arbitration, has moved for limited discovery. Thus, the Court will look to Rule 56(e) for guidance.

(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

"The Court has the discretion to give a party the opportunity to 'properly support an assertion of fact.'" *Kam-O'Donoghue v. Tully*, No. CV 16-11054-MLW, 2018 WL 2739930, at *1 (D. Mass. Mar. 16, 2018) (citing Fed. R. Civ. P. 56(e)(1)).  Further, "the 2010 Advisory Committee Note to Rule 56(e) explains, "In many circumstances this opportunity will be the court's preferred first step." *Id.* (citing Fed. R. Civ. P. 56(e) Advisory Committee Note to 2010 Amendment) (other citations omitted).  Finally, "giving the party an opportunity to support the fact "minimizes the chance of an unjust result based on an inadequate record."  *Id.* (citing *Parks v. Blanchette*, 3:09-CV-604 VAB, 2015 WL 1970526, at *1 (D. Conn. May 1, 2015)) (other internal citations omitted); *see also Capps v. Cremation Options, Inc.*, No. 3:12-CV-545-TAV-HBG, 2015 WL 12656928, at *1 (E.D. Tenn. Dec. 10, 2015) (explaining that any order pursuant to Rule 56(e)(4) should be "designed to encourage proper presentation of the record") (citing Fed. R. Civ. P. 56(e) 2010 Advisory Committee's note to 2010 amendment).

In the instant matter, the parties agree that Plaintiff did not sign the arbitration agreement, nor was he an authorized user on the account.  Comcast submitted the Declaration of Nicole Patel, Director of Regulatory Compliance at Comcast Cable Communications, LLC, stating that Austin Proffitt opened a Comcast account for residential internet service at 2302 Dodson Avenue, Knoxville, Tn 37917 and authorized Comcast to call a phone number ending in 8123.  [Doc. 54-1 at ¶¶ 8-9].[5]  The Declaration further states that Elaine Proffitt was listed as an authorized user on the account and that "an authorized user of the Dodson Account picked up a Welcome Kit,

---

[5] Austin Proffitt is Plaintiff's son-in-law, and Elaine Proffitt is Plaintiff's daughter.

including the subscriber agreement, from a Comcast retail store." [*Id.* at ¶¶ 10, 13]. It is the Subscriber Agreement that contains the subject arbitration provision. [*Id.* at ¶ 14]. The Subscriber Agreement contains no required signatures. [Doc. 54-2].

As mentioned above, the parties do not appear to dispute that Plaintiff did not sign the arbitration agreement and that he was not an authorized user. This, however, does not end the Court's analysis. "Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). "Although there are not many Tennessee state court decisions specifically explicating the panoply of circumstances in which a nonsignatory can compel arbitration or be compelled to arbitrate a dispute, it is clear that the issue is dependent on the application of ordinary common law principles." *Blue Water Bay at Ctr. Hill, LLC v. Hasty*, No. M201602382COAR3CV, 2017 WL 5665410, at *8 (Tenn. Ct. App. Nov. 27, 2017).

 In Tennessee, "[p]arties can become bound to a contractual arbitration provision absent their signatures." *Id.* As one Tennessee court explained, "The federal courts have recognized at least five doctrines justifying the application of an arbitration provision to a nonsignatory: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. *Id.* (citing *Doe # 1 v. Deja Vu Consulting Inc.*, No. 3:17-cv-00040, 2017 WL 3837730, at *15 (M.D. Tenn. Sept. 1, 2017)).

Here, the Court finds limited discovery warranted regarding the circumstances of Plaintiff's alleged use, or lack thereof, of Comcast's services, the living arrangements at Plaintiff's residence between March and May 2017, and Plaintiff's alleged consent to use his telephone number with the Comcast account. Defendant claims that Plaintiff accepted the arbitration

agreement by using Comcast's services. Defendant contends that it delivered its internet service to Plaintiff's residence from March 1, 2017, through May 28, 2017. Plaintiff, however, disputes that he used Comcast's services and filed a declaration to that effect. Defendant also argues that Plaintiff is in privity with his daughter and son-in-law. Defendant states that the parties had a shared telephone number and a shared interest ending calls to the 8123 number. According to Defendant, there is evidence that Plaintiff consented to the use of his telephone number being used with the Comcast account.

Given these factual disputes, coupled with the "panoply of circumstances in which a nonsignatory can compel arbitration or be compelled to arbitrate a dispute," *Hasty*, 2017 WL 5665410, at *8, the Court finds that the best approach is to take limited discovery into these issues so that the Court can promptly rule on whether a valid arbitration agreement exists based on a complete record. *See Cannon v. SFM, LLC*, No. 18-2364-JWL, 2019 WL 568581, at *3 (D. Kan. Feb. 12, 2019) ("Based on the foregoing, it is clear that discovery is required to resolve the limited factual dispute concerning whether plaintiff signed the arbitration agreement."); *Alexander v. Pipeline Prods., Inc.*, No. 1:16-CV-00005-KGB, 2017 WL 7299855, at *8 (E.D. Ark. Mar. 13, 2017) (denying defendant's motion to compel arbitration without prejudice finding that "the parties must conduct limited discovery on the issue of whether a valid arbitration agreement exists and whether it was effectively communicated to plaintiffs."); *Ross v. CACH, LLC*, No. CIV. 2:14-6321 WJM, 2015 WL 1499282, at *3 (D.N.J. Apr. 1, 2015) ("Because an agreement to arbitrate cannot be gathered from the face of the Complaint, the Court will deny the motion without prejudice, order limited discovery on whether an agreement to arbitrate exists, and if necessary, entertain a future motion to compel arbitration under a summary judgment standard.").

As a final matter, the Court notes that the factual issues should be easy to ascertain and that voluminous discovery is not necessary. The Court **RECOMMENDS** that the parties be given forty-five (45) days to engage in limited discovery on whether a valid arbitration agreement exists between Plaintiff and Comcast.

## IV.     CONCLUSION

Accordingly, for the reasons stated above, the Court **RECOMMENDS**[6] that Defendant's Motion [**Doc. 31**] requesting limited discovery relating to whether the parties agreed to arbitrate be **GRANTED**.

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).